UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN P.,[1]

    **Plaintiff,**

v.

    Case No. 3:20-cv-00252
    Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff John P. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 8, *Defendant's Memorandum in Opposition*, ECF No. 12, *Plaintiff's Reply*, ECF No. 14, and the *Certified Administrative Record*, ECF No. 7. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his current applications for disability insurance benefits and supplemental security income on February 27, 2017, alleging that he has been disabled since February 11, 2017, based on a number of physical and mental impairments. R. 245-58, 264-65.[3] The applications were denied initially and upon reconsideration, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 183-84. Administrative Law Judge ("ALJ") Stuart Adkins held a hearing on April 10, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39-68. In a decision dated June 13, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 11, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 15-32. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 23, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

II.  LEGAL STANDARD

A.  Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

2

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step

five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 34 years old on his alleged disability onset date. R. 30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: congestive heart failure; cardiomyopathy; hypertension; obesity; anxiety; depression; and attention-deficit hyperactivity disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), subject to the following limitations: (1) lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently; (2) can stand and/or walk for about six hours and sit for about six hours in an 8-hour workday; (3) no climbing of ladders, ropes, and scaffolds; (4) occasional crawling and climbing of ramps and/or stairs; (5) the individual should avoid unprotected heights, dangerous machinery, commercial driving, and electromagnetic fields; (6) able to perform routine tasks but not at a production rate pace and without strict performance quotas; (7) can have occasional interaction with supervisors, co-workers, and the general public; and (8) able to tolerate occasional changes to a routine work setting, defined as 1-2 per week.

R. 23-24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a roofer, fast food cook, dietary aide, and institutional cook. R. 30.

At step five, the ALJ found that a significant number of jobs—*e.g.*, jobs as a warehouse checker, marker, and laundry folder—existed in the national economy and could be performed by

Plaintiff. R. 31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 11, 2017, his alleged disability onset date, through the date of the decision. R. *Id*.

Plaintiff disagrees with the ALJ's findings at steps four and five[4] and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 12.

## IV.    RELEVANT EVIDENCE

Plaintiff testified at the administrative hearing that he left school in the ninth grade because he could not understand the material. R. 47. He suffers from cardiac conditions that require a defibrillator and a pacemaker and which cause fatigue and anxiety, as well as "weird beating palpitations" that cause dizziness. R. 53. He is "scared to go in public and deal with people," and this anxiety extends even to such tasks such as going to the gas station. *Id*. Watching the news "makes [him] scared." *Id*. Plaintiff also suffers chronic back pain, and his feet swell because of his heart conditions. R. 54. He testified that he can stand for only one hour at a time, and that he uses a cane to do so. *Id*. He also has difficulty navigating stairs and experiences pain in his foot. R. 47.

---

[4] Although Plaintiff argues that the ALJ failed to carry the step five burden, Plaintiff's arguments in that regard pertain more easily to the ALJ's RFC determination.

A. Cardiac Impairments

The record reflects a history of cardiomyopathy and congestive heart failure, as well as the implantation of a defibrillator and pacemaker by Mujtaba Khan, M.D., in 2010. R. 357-58, 684. In March 2012 (*i.e.*, years prior to Plaintiff's alleged disability onset date), Dr. Khan noted that Plaintiff complained of fatigue and weakness and "wants disability." R. 365. Dr. Khan commented at that time that Plaintiff was "to be considered permanently disabled." *Id.* However, at following office visits with Dr. Khan, Plaintiff denied fatigue, syncope, pain, weakness, palpitations, or shortness of breath. R. 367 (June 2012), 370 (August 2013), 371 (September 2014), 375 (February 2016). In February 2017, Dr. Khan noted that Plaintiff had reported that he was "progressive [sic] getting worse for the last few months" and was experiencing more shortness of breath and fatigue. R. 521. He reported that he was unable to walk even fifteen yards. *Id*. On clinical examination, however, Dr. Khan noted a normal rate, regular rhythm, normal S1, S2, and no murmurs, rubs, clicks or gallops. R. 522. Dr. Khan diagnosed paroxysmal atrial fibrillation and congestive heart failure, NYHA class II, and commented that Plaintiff "has worsening acute on chronic systolic heart failure with underlying cardiac myopathy. . . ." R. 523.

On February 10, 2017, Stacy Watson, CCMA,[5] wrote that Plaintiff "needs to be off work indefinitely due to his cardiac conditions. [Plaintiff] has severe cardiomyopathy, an implantable cardioverter defibrillator, congestive heart failure, as well as shortness of breath with exertion." R. 576.

In July 2017, Plaintiff underwent a consultative physical examination by Phillip Swedberg, M.D., at the request of the state agency. R. 566-75. Plaintiff complained of shortness of breath and fatigue. R. 570. On examination, Dr. Swedberg noted ambulation with a steady gait

---

[5] Ms. Watson appears to be Dr. Khan's assistant. *See* R. 521.

7

and without aids; Plaintiff was comfortable in both the sitting and supine positions. R. 571. Dr. Swedberg found no clinical evidence of congestive heart failure. *Id*. Manual muscle testing and range of motion were entirely normal. R. 566-69. According to Dr. Swedberg, Plaintiff's examination "was entirely normal and age appropriate." R. 572. He attributed Plaintiff's shortness of breath to his continued cigarette smoking. *Id*.

In August 2017, Diane Manos, M.D., reviewed the evidence of record and opined that Plaintiff's acute on chronic systolic heart failure, NYHA Class II, with mild global hypokinesis, R. 82, would permit lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing/walking and sitting about 6 hours each in an 8-hour workday. *Id*. Plaintiff could occasionally climb ramps/stairs and crawl, but could never climb ladders, ropes or scaffolds. *Id*. He should avoid all exposure to hazards. R. 83. In October 2017, Mehr Siddiqui, M.D., reviewed the record on reconsideration and agreed with Dr. Manos' opinions. R. 121.

At office visits in May and August 2018, Plaintiff complained to Dr. Khan of worsening shortness of breath. R. 589, 610. On examination, Dr. Kahn again noted a normal rate, regular rhythm, normal S1, S2, and no murmurs, rubs, clicks or gallops. R. 590, 612. Dr. Khan commented that Plaintiff was experiencing "mild worsening" of his chronic systolic heart failure. R. 591, 616. Notes from the August 2018 office visit include Dr. Khan's comment, "And is unable to work." R. 616. However, at Plaintiff's next office visit, in December 2018, Dr Khan commented, "Patient doing quite well[;] he denies any angina[,] palpitations[,] shortness of breath or syncope." R. 1844-45. Plaintiff had not experienced atrial fibrillation "for quite some time…." R. 1845. At the February 2019 office visit, Plaintiff was "stable from cardiomyopathy standpoint" and his arrhythmias were "in good control." R. 854.

In January 2019, Jason Roberts, APRN, an advanced practice nurse with Plaintiff's family practice, *see* R. 1699, completed a medical assessment of Plaintiff's ability to do work-related activities and opined that Plaintiff's history of cardiac myopathy would limit him to lifting and carrying 10 pounds only occasionally, but that his ability to stand, walk and sit are not affected by that impairment. R. 658. He could climb, balance, stoop, crouch, and kneel only occasionally and could never crawl. R. 659. Pushing and pulling would cause fatigue. *Id*. Plaintiff had no environmental restrictions. R. 660. According to Nurse Roberts, Plaintiff had the RFC to perform the exertional demands of sedentary work on a sustained basis. *Id*. However, Plaintiff would miss work more than two time per month or would be off task more than 15% of the workday. R. 661.

The ALJ reviewed this medical record in exhaustive fashion, as well as the opinions reflected in the record, and made clear that his determination of an RFC for a limited range of light work was based on his evaluation of the evidence and the opinions. The ALJ accorded "little weight" to the opinion of Stacy Watson, Dr. Khan's apparent medical assistant:

> Ms. Watson does not appear to be a physician or other acceptable medical source and her statement merely sets forth diagnoses and says the claimant cannot work. Her broad statement is entitled to little weight for two reasons. Initially, the ultimate conclusion concerning a claimant's disability status is an issue reserved to the Commissioner for determination. Second, Ms. Watson provided no function-by-function limitations, stating simply that the claimant needed to be off work, and she provided no rationale for her conclusion. Ms. Watson's opinion is entitled to little weight.

R. 28 (citations to record omitted). The ALJ also assigned "little, if any weight" to Nurse Roberts' opinion:

> Mr. Roberts is not an acceptable medical source whose opinion may be entitled to deference under the Regulations. His opinion is entitled to little weight. Mr. Roberts is not a cardiologist, internist, or other medical doctor and he provided no rationale for his restrictions. He merely indicated that the claimant had a pacemaker. In addition, and more importantly, this opinion ignores the stable and essentially normal clinical findings,

9

> as well as the documented objective findings concerning the claimant's cardiac condition. Accordingly, Mr. Roberts' opinion is entitled to little, if any, weight.

R. 30 (citations to record omitted).

The ALJ accorded "significant, but partial", weight to the opinion of Dr. Swedberg, the consultative examiner:

> Dr. Swedberg's opinion is entitled to significant overall weight because it is consistent with his clinical observations, as well as the overall medical evidence. While the above-described functional capacity takes into account his findings and opinion, he did not set forth any specific function-by-function limitations. Accordingly, his opinion is entitled to significant, but partial weight.

R. 28.

The ALJ accorded "significant weight" to the opinions of Drs. Manos and Siddiqui, the state agency reviewing physicians:

> [T]hey accurately take into account all of the claimant's physical impairments and provide reasonable limitations based on the clinical and objective findings. The treatment records confirm that the claimant's physical conditions have remained stable at all relevant times since the alleged disability onset date. There is no evidence of medically determinable worsening of the claimant's physical conditions that would support greater physical restrictions.

R. 27-28. In discussing the opinions of these state agency reviewing physicians, the ALJ also stated:

> The evidentiary record, and particularly the objective and clinical findings noted by Dr. Khan and the claimant's other treating sources note no worsening or significant change in the claimant's physical condition at any relevant time. The examination of Dr. Swedberg noted no signs of cardiac decompensation or heart failure and those physical findings have not changed. The restrictions set forth by the State Agency medical consultants adequately account for the nature, character, severity of the claimant's physical impairments, as well as his treatment history and they take into consideration any effects of obesity on the claimant's physical conditions.

R. 25 (citations to record omitted).

      B.      <u>Mental Impairments</u>

As noted above, the ALJ found that Plaintiff's severe impairments also include anxiety, depression, and attention deficit hyperactivity disorder. R. 17. In May 2017, Ryan R. Wagner, Psy.D., conducted a consultative evaluation of Plaintiff at the request of the state agency. R. 526-31. Dr. Wagner noted a "downcast" facial expression and that Plaintiff "spoke in hopeless terms about various aspects of his life." R. 529. Plaintiff was "somewhat tense and on edge" during the evaluation. *Id*. Plaintiff was alert and Dr. Wagner estimated that Plaintiff was "likely of low average intelligence." *Id*., R. 530. According to Dr. Wagner, Plaintiff's symptoms were consistent with major depressive disorder and anxiety. R. 530. His short-term memory and fund of information were intact but his remote memory, and his attention and concentration, were "limited." *Id*.  In a functional assessment of Plaintiff's ability to engage in work-related activities, Dr. Wagner opined that Plaintiff would have difficulty understanding instructions; would not have trouble remembering instructions; was able to converse effectively; would have difficulty acquiring new information in a work setting; and would have difficulty maintaining attention and focus. *Id*. Plaintiff's reported history of problems with attention and concentration "may affect his ability to complete tasks in a timely and effective manner." R. 531. Plaintiff's low average range of intellectual functioning would suggest "some difficulty understanding and responding to supervisor requests," and "may lead to difficulty managing work expectations and pace." *Id*.  His mental health problems "may lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate co-worker relationships." *Id*. Plaintiff's history of depression and anxiety "may compromise his ability to respond to work pressures and lead to increased likelihood of agitation and [] anxiety attacks." *Id*.

11

In August 2017, Joseph Edwards, Ph.D., reviewed the record for the state agency and concluded that the record documented depressive, bipolar and related disorders, anxiety and obsessive-compulsive disorders, and attention deficit/hyperactivity disorder. R. 99. However, Dr. Edwards opined that Plaintiff was only mildly impaired in his ability to understand, remember, or apply information, and was moderately impaired in his ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage himself. R. 100. According to Dr. Edwards, "[Claimant] is capable of attending and persisting in order to complete 1-4 step tasks in a setting not needing close sustained focus/attention or sustained fast pace." R. 105. He "is capable of superficial social interactions with familiar coworkers and supervisors," *id*., and is "capable of routine tasks in a predictable setting where major changes are infrequent and easily explained and there are no stringent time or production requirements." R. 106. In October 2017, Ketherine Reid, Psy.D., reviewed the record on reconsideration and concurred with Dr. Edwards' opinions. R. 124-25.

That same month, Plaintiff began treatment at Five Rivers Health Center for, *inter alia*, anxiety and depression. R. 1754. In November 2017, Psychiatrist Molly Josephine Hall, M.D., first saw Plaintiff and noted that his thought process was logical and goal-directed and his affect was mildly dysphoric and anxious; he had no delusions or hallucinations, his cognition was intact, and his insight and judgment were good. R. 1745. Dr. Hall diagnosed panic disorder without agoraphobia, with severe panic attacks, and a mild episode of recurrent major depressive disorder. R. 1743. Dr. Hall prescribed medication. *Id.* In January 2018, Plaintiff reported "considerable anxiety and panic attacks." R. 1740. He found that the prescribed medication was helpful, although he asked that the dosage be increased and Dr. Hall agreed with that request. *Id.* The following month, Plaintiff reported that the medication was "very helpful for his severe

anxiety," R. 1735, but Dr. Hall also noted symptoms of PTSD, for which she prescribed "appropriate" medication. *Id*. Findings on clinical examination remained the same. *Id.* In February 2018, Dr. Hall diagnosed panic disorder without agoraphobia with severe panic attacks, chronic post-traumatic stress disorder, and a mild episode of recurrent major depressive disorder. R. 1732-33. Examination findings were again unchanged. R. 1735. In April 2018, Dr. Hall noted that medication "is controlling his anxiety well-he has partial panic occasionally but not to the degree that he had initially." R. 1727. In July 2018, one medication was increased, but Plaintiff reported that another medication "is continuing to be helpful but that his external circumstances sometimes overwhelm the effect." R. 1722. Findings on mental status examination remained unchanged. *Id*. The following month, Dr. Hall noted that Plaintiff was "[s]table on current regimen…. Seems more upbeat." R. 1717. At his next office visit, in November 2018, Plaintiff reported no panic attacks and Dr. Hall noted that Plaintiff was "stable on current medication regimen." R. 1709. In January 2019, Plaintiff reported feeling more frightened and anxious. R. 1704. On examination, Dr. Hall again noted that Plaintiff's thought process was logical and goal-directed, his mood was reported to be anxious, his affect was dysphoric and anxious but his range was evident. There were no delusions or hallucinations; his cognition was intact and his insight and judgment were good. *Id*.

On January 14, 2019, Dr. Hall completed a mental impairment questionnaire. R. 654-56. According to Dr. Hall, Plaintiff suffered from chronic post-traumatic stress disorder, agoraphobia, panic, and recurrent major depression. *Id*. As a result, Dr. Hall opined, Plaintiff would be off task for up to 20% of the workday or more and could be expected to be absent from work more than three times per month. *Id*. Dr. Hall also indicated that Plaintiff suffered "marked" or "extreme" limitations in his ability to function. R. 655-56. Specifically, Dr. Hall

13

opined that Plaintiff had extreme limitations in his ability to relate to and work with supervisors, co-workers, and the public, as well as in his ability to regulate his own emotions, behavior, and well-being in a work setting. R. 656.

In considering Dr. Hall's opinion, the ALJ articulated the appropriate standard governing the opinions of treating providers, R. 29, but accorded little weight to Dr. Hall's opinion:

> Dr. Hall, the claimant's treating psychiatrist[,] submitted a mental residual functional capacity assessment indicating that the claimant experienced marked-to-extreme limitations in multiple work-related mental areas. However, Dr. Hall['s] treatment records only note the claimant's subjective complaints and her observations of a mildly to somewhat dysphoric mood. They consistently note intact cognition, memory, insight and judgment, logical and goal-directed thought processes, and no thought content abnormalities. Those records also report that the claimant is cooperative and pleasant with no abnormal movement, normal gait and station, and no reports of hallucinations or delusions. Those observations are not consistent with Dr. Hall's assessment of marked and extreme limitations. Accordingly, because the findings set forth in her own records do not support her assessment, that opinion is not entitled to controlling or deferential weight. Because her assessment is unsupported by her treatment records, or any other significant evidence beyond the claimant's subjective reports, her opinion cannot be given more than little weight, and then only to the extent that the claimant has severe mental impairments within the meaning of the Social Security Act. Dr. Hall's opinion is entitled to little weight.

R. 29-30 (citations to record omitted).

The ALJ assigned "significant, but partial weight" to Dr. Wagner's opinions:

> Dr. Wagner's assessment and opinion is consistent with his clinical findings, but he set forth no specific function-by-function limitations and he indicated that the claimant might experience, or was likely to experience some difficulty in particular areas. The above-described residual functional capacity sets forth reasonable functional limitations consistent with his general conclusions concerning the claimant's functional capacity from a mental standpoint. Accordingly, Dr. Wagner's opinion is entitled to significant, but partial weight.

R. 28.

The ALJ accorded "significant weight" to the opinions of Drs. Edwards and Reid, the state agency reviewing psychologists:

> The opinions of the State Agency psychological consultants are also entitled to significant weight because they accurately take into account all of the claimant's mental impairments and provide reasonable limitations based on the clinical findings noted throughout the evidentiary record. The treatment records confirm that the claimant's mental conditions have remained stable at all relevant times since the alleged disability onset date. In fact, the only remarkable findings by Dr. Hall are her notations of a mildly to somewhat dysphoric affect with some range. There is no evidence of medically determinable worsening of the claimant's mental conditions that would support more significant restrictions from a mental standpoint. Accordingly, the record supports these opinions and they are entitled to significant weight.

R. 28 (citations to record omitted).

## V. DISCUSSION

Plaintiff raises two arguments on appeal: (1) that the ALJ erred in weighing the various medical opinions in the record; and (2) the ALJ failed to carry the step five burden to establish that Plaintiff can perform a significant number of jobs in the national economy. This Court disagrees with both arguments.

### A. Medical Opinions

Under the controlling regulations[6] at the time Plaintiff filed his applications, the opinion of a treating physician must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating physician's opinion is not accorded controlling weight, the ALJ must offer "good reasons" for discounting that opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Those reasons must also find substantial support in the record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Id*.

---

[6] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, *inter alia*, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Because Plaintiff's applications in this case were filed prior to that effective date of March 27, 2017, the treating physician rule applies to his claims.

15

However, a formulaic recitation of factors is not necessary. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

As is relevant here, when an ALJ does not assign controlling weight to the opinion of the claimant's treating provider, the ALJ must explain the weight assigned to the opinions of all medical sources. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). In doing so, the ALJ is required to apply the following factors: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. . . ." *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(3)-(6)). *See also* 20 C.F.R. § 416.927(d)(1)-(6).

Plaintiff contends that the ALJ's decision to accord little weight to Dr. Hall's opinion constitutes reversible error. As this Court's summary makes clear, Dr. Hall's opinion of extreme limitation of function is belied by her own treatment notes which consistently noted that Plaintiff's thought process was logical and goal-directed, his mood was reported to be anxious, his affect was commonly mildly dysphoric and anxious but his range was evident; there were no delusions or hallucinations; his cognition was intact and his insight and judgment were good. Moreover, Plaintiff's conditions responded to medication. Moreover, and Plaintiff's contention to the contrary notwithstanding, Dr. Wagner's findings and opinion do not support Dr. Hall's extreme limitations of function. As the ALJ found, Dr. Wagner's assessment was articulated in only the most general of terms; he failed to provide specific function-by-function limitations. The ALJ explained in detail why he declined to assign controlling weight to Dr. Hall's opinion

and the ALJ's evaluation conformed to the applicable standard and enjoys substantial support in the record.

Plaintiff also disagrees with the ALJ's evaluation of the opinion of Ms. Watson, who is apparently Dr. Khan's assistant. In assigning "little weight" to that opinion, the ALJ considered the proper regulatory factors, including the fact that Ms. Watson is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2016). Moreover, Ms. Watson's conclusory statement that Plaintiff "needs to be off work" addressed an issue that is reserved to the Commissioner for determination. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In short, the ALJ did not err in his evaluation of Ms. Watson's opinion.

Plaintiff also argues that the ALJ improperly accorded greater weight to the opinions of Dr. Swedberg, the consultative examiner, and to those of the state agency reviewing physicians. However, substantial evidence supports the ALJ's evaluations of these opinions and the ALJ adequately explained his evaluation of these opinions. Under these circumstances, this Court must defer to the findings of the ALJ in this regard.

**B.     The ALJ's RFC Determination**

Finally, Plaintiff argues that the ALJ's determination at step five of the sequential evaluation, *i.e.,* that Plaintiff could perform substantial gainful activity despite his impairments, was flawed because the ALJ failed to include in Plaintiff's RFC a limitation to only "superficial" interaction with others, as was recommended by the state agency reviewing psychologists. At the administrative hearing, the ALJ asked the vocational expert to assume a claimant with Plaintiff's vocational profile and impairments and with a limitation to, *inter alia*, "*occasional* interaction with supervisors, coworkers, and the general public…." R. 63, 64 (emphasis added). It was in response to these hypotheticals that the vocational expert identified jobs that such a claimant

17

could perform. According to Plaintiff, the ALJ erred in posing to the vocational expert a hypothetical containing a limitation for "occasional" interaction with others, but not a limitation for "superficial" interaction, because it cannot be discerned whether the latter limitation would preclude substantial gainful employment. The Acting Commissioner takes the position that the ALJ, whose duty it is to determine a claimant's RFC, properly considered this issue and expressly explained his reasoning in this regard. *Defendant's Memorandum in Opposition*, ECF No. 12, PageID# 2048. This Court agrees.

This Court is among many that have addressed the difference between "occasional" and "superficial" interaction or contact for purposes of disability claims. *See, e.g.*, *Spinner v. Comm'r of Soc. Sec.*, No. 2:20-cv-4676, 2021 WL 7908552, at *2 (S.D. Ohio Nov. 29, 2021); *Greene v. Saul*, No. 3:19-cv-0687, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020); *Midlam v. Berryhill*, No. C17-5650, 2018 WL 2932134, at *2 (W.D. Wash. June 12, 2018). However, it must not be forgotten that it is the ALJ who is tasked with determining a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In the instant case, the ALJ explained why he included in Plaintiff's RFC only a restriction to "occasional" interaction with others, and excluded a restriction to "superficial" interaction as opined by the state agency reviewing psychologists, upon whose opinions the ALJ otherwise relied:

> The evidentiary record supports generally those [reviewers'] opinions. The claimant's cognition remains intact, as does his memory and judgment. He exhibited some distraction to Dr. Wagner, but the limitation to routine tasks accounts for any limitations in this area. The claimant reported some difficulty around others, but he is cooperative and has never exhibited paranoia or abnormal thought content. He reported no problems in past work activity and there are no reported difficulties interacti[ng] with treating or examining sources. However, in light of the nature of his mental impairments, and his noted dysphoric affect, it is reasonable to restrict all interaction with others to no more than occasional. The term superficial, as used by the State Agency psychological consultant[s], is rejected because it is not defined for Social Security for vocational purposes. The term occasional, on the other hand, has a specific definition for both Social

> Security and vocational purposes. Additionally, in light of the claimant's dysphoric mood and reports of depression, anxiety, and distractibility the claimant can tolerate occasional changes to a routine work setting, which is defined as 1-2 changes per week. This limitation is consistent with the nature of his impairments, as well as the conclusions of the State Agency psychological consultants. He has not required inpatient treatment and the records of Dr. Hall note only routine medication management services with stable mental status findings. The medical evidence supports no additional restrictions from a mental standpoint.

R. 26. The ALJ thus carefully considered the issue and clearly explained why he did not include a limitation to "superficial" contact with others. That is all that is required. *See M[.] v. Comm'r of Soc. Sec.*, No. 3:19-cv-0047, 2020 WL 103579, R *2 (S.D. Ohio Jan. 9, 2020), *report and recommendation adopted*, No. 3:19-cv-0047, 2020 WL 1227208 (S.D. Ohio March 13, 2020).

## VI. CONCLUSION

For all these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 8 and **AFFIRMS** the Commissioner's decision for further proceedings consistent with this *Opinion and Order*.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  August 5, 2022                               *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE

19